## AMERICAN COLLOID CO.
### v.
### EASTERN CLAY PRODUCTS, Inc.
#### Civ. A. No. 2023.

United States District Court
S. D. Ohio, E. D.

May 19, 1952.

Affirmed Oct. 15, 1953.

See 207 F.2d 655.

Wright, Harlor, Puppus, Morris & Arnold, of Columbus, Ohio and A. C. Ahlberg, of Ahlberg, Wupper & Grandolph, of Chicago, Ill., for plaintiff.

Corbett, Mahoney & Miller, and John J. Mahoney, Columbus, Ohio, for defendant.

WILKIN, Judge.

This case was submitted on the pleadings, evidence and briefs. The complaint charges infringement by the defendant of patents numbers 2,036,617 and 2,186,661. Plaintiff's ownership of the patents is admitted. The claims involved are 7, 8, and 12, which are product claims, and 9 and 10, which are process claims, of Patent No. 2,036,617, and Claim 1 of Patent No. 2,186,661, which is a product claim. For brevity, the patents were referred to by the last two numerals of their respective numbers, that is, as 17 and 61. The defendant denies infringement and prays that the patents be declared invalid.

The subject matter of the patents is Wyoming type bentonite clay. They relate to the preparation of forms of clay in order to make it more readily slakable in water. The patents were based upon the fact that bentonite clay is more rapidly and readily soluble in water when its particles are ground to certain sizes from which the dust or powdered clay has been removed.

Patent 61 is claimed to be an improvement over the earlier 17 patent. Its object is the formation of pastes, gels, or slurries from clay sized to a finer degree than is disclosed in patent 17 by allowing it to flow in the form of a sheet over a stream or sheet of water. The advantage of such a graded bentonite was to permit the more extended utilization of fines and its dispersion in water by a continuous process. Claim I reads: "A mass of particles of bentonitic clay, etc.,"

The plaintiff thus summarizes its claims:

"The general process involved in the case at bar is the sizing of dry, fragmented bentonite; and the result produced is a new and useful product in the form of a chemically unchanged, granular bentonite, free from added foreign materials and possessing advantages which were neither foreshadowed nor suggested by any granular clay known to the prior art."

The issues involved raise two questions:

"I. Has defendant infringed one or more of claims 7, 8, 9, 10, and 12 of Patent 17 by manufacturing or selling granular products of Wyoming type bentonite, which it has designated as No. 112, No. 120, 12 mesh and 20 mesh, and has it infringed Claim I of Patent 61 by manufacturing or selling a bentonite

product which it has designated as No. 140?

"II. Are Patents 17 and 61 valid or invalid?"

The defendant admitted that prior to this suit it had produced granular bentonite by using a double screen operation and that it sold such product as "112, 120, and 140 bentonite". Defendant said that when the plaintiff's 17 Patent was called to its attention in 1946, it, "in an excess of caution and without legal advice as to its rights stopped making these grades." Later, however, the defendant began the manufacture of its products known as "12 and 20" bentonite. The defendant contends that the processing of these grades followed the prior art by merely mining, drying, and screening the clay over a 12 or 20 mesh screen. The bentonite clay which fell through the screens, fines and all, was sacked and sold. Such process, the defendant believed, could not violate any patent because it did merely what had been done for many years in the clay industry, and in other arts which processed natural materials.

It is the defendant's contention that there could be no invention in merely applying to one kind of clay the methods and apparatus that had been previously used for many years in the processing of other kinds of clay. The defendant asserted that the methods and products disclosed in the patents were old in the art. Even if bentonite had never been screened or sized within the range of sizes shown in the patents, the plaintiff contended that it would not have amounted to invention to do so, because other clays and other materials had been so processed, screened and sized. The defendant points out that the patents show no new apparatus, and insists that it is not invention to take a natural substance and reduce it by mechanical division from bulk to small particle sizes so as to make it more readily and rapidly soluble. Any improvement which the plaintiff has made the defendant contends is an advance only in degree, a change only in form and proportions, which is not such invention as will sustain a patent.

After careful consideration of the claims and the objections, and a thorough study of the authorities, this Court is constrained to the opinion that the principles of law stated by the Supreme Court in the case of Milligan & Higgins Glue Company v. Upton, 97 U.S. 3, 24 L. Ed. 985 are controlling in this case. The Court has been unable to differentiate this clay case from the glue case. This case does not come within the exceptions cited by the plaintiff.

The evidence is clear that the plaintiff understood the properties of bentonite clay and processed the clay so as to make it more readily available to the trade. In the administration of the patent law one frequently feels a need for some refinement of the patent system which would allow some reward or recompence for mere improvements or advances which do not meet the strict requirements of patentable invention.

It is stated in plaintiff's reply brief, that prior to the application for patent 17 in 1934, there were only two products of dry and swelling bentonite on the market,—one a powder of about 200 mesh, and the other a roughly granulated material; and there were no intermediate products. The plaintiff first supplied such intermediate product by manufacturing bentonite in particle sizes lying between an upper limit of coarse particles and a lower limit of fine particles. Evidently such products supplied a market demand. But such sized particles do not embody anything so new and novel as to entitle them to a patent monopoly. The plaintiff must look for its reward to such tribute as business generally pays for a superior article. With admirable business acumen the plaintiff associated the physical properties of bentonite clay and the demands of the trade, and by mechanical processes produced bentonite with more refinement of grading—both up and down—but it produced nothing which could have been thought impossible of production by methods then in use.

Paraphrasing but slightly the language used by the Supreme Court in Glue Company v. Upton, so as to make it applicable to clay instead of glue, the controlling principle of that case is made clearly applicable to this case:

It thus appears that the invention claimed is not any new combination of ingredients, creating a different product, or any new mechanical means by which a desirable change in the form of a common article of commerce is obtained; but it consists only of the ordinary bentonite clay reduced to particle sizes lying between an upper limit of coarse particles and a lower limit of fine particles. The advantages from such division consist in its more ready and rapid solution \* \* \* and its enhanced salableness. The whole claim is to an old article of commerce in a state of mechanical division greater than previously used, but unchanged in composition and properties; and the benefits arising from the increased division are such as appertain to all soluble objects when divided into minute particles \* \* \* nor can the changed form of the article from its condition in bulk to small particles \* \* \* by mechanical means, make it a new article, in the sense of the patent law.

In spite of the presumption of validity which attaches to the patents by virtue of the granting of letters patent, when they are subjected to the analysis and scrutiny of trial proceedings under the attack of an alleged infringer and examined in the history of the industry and analogous art, the Court is constrained to hold the patents invalid for want of invention.

If the patents are invalid the claim of infringement of course must be dismissed. In passing, however, the Court points out that the apparatus and methods employed by the defendant were concededly old in the industry before the patents were applied for. The defendant packaged and sold what such apparatus and methods produced. The evidence does not show that the defendant's product was as particularly sized or highly graded as the plaintiff's patented product. If the defendant used well known methods and machinery, it could hardly be held to have infringed because part of its product fell within the wide range of particle sizes covered by the claims of the patents.

Furthermore, it should be stated in passing that the Court finds from the evidence that the production of bentonite clay in granular form had been taught and practiced prior to the patent application. Fullers earth and other clay material has also been produced in granular form, and the Court concludes that all clay products should be considered analogous art.

Complaint dismissed, judgment for defendant, with costs.